<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| MING YANG, *individually and on behalf of all others similarly situated*, | : <br> : <br> : |
| Plaintiff, | : Civil Case No. 14-3538 (FSH) <br> : <br> : |
| v. | : <br> : |
| TIBET PHARMACEUTICALS, INC., *et al.*, | : <br> : |
| Defendants. | : <br> : |
| ROBIN JOACHIM DARTELL, *individually and on behalf of all others similarly situated*, | : <br> : <br> : |
| Plaintiff, | : Civil Case No. 14-3620 (FSH) <br> : (LEAD) <br> : |
| v. | : <br> : **OPINION & ORDER** |
| TIBET PHARMACEUTICALS, INC., *et al.*, | : <br> : Date: February 20, 2015 |
| Defendants. | : <br> : |

## <u>HOCHBERG, District Judge:</u>

This matter comes before the Court upon four motions to dismiss by Defendants Hayden

Zou ("Zou") (Dkt. No. 96), Acquavella, Chiarelli, Shuster, Berkower & Co., LLP ("ACSB")

(Dkt. No. 101), Sterne Agee Group, Inc. ("SAG") (Dkt. No. 102), and L. McCarthy Downs III

("Downs") (Dkt. No. 104) in the two above-captioned matters.[1] The Court has reviewed the

submissions of the parties and considers the motion pursuant to Federal Rule of Civil Procedure

78.

---

[1] The Court uses docket numbers from Civil Action No. 14-3620, the lead case in this matter. Zou, SAG, and Downs are named in both matters. ACSB is a named defendant in Civil Action No. 14-3620 only.

## I.    BACKGROUND[2]

On January 24, 2011, Defendant Anderson & Strudwick ("A&S") served as the underwriter of Tibet's initial public offering and sold $16.5 million of Tibet common stock to investors using an allegedly false and misleading initial offering prospectus that "misrepresented Tibet as a financially sound and profitable company." (Am. Compl. ¶ 2.) Plaintiffs allege that, months prior, a Chinese had court entered a $4.54 million judgment against Tibet and that, on January 10, 2011, the Chinese court entered an order permitting a bank to seize all of Tibet's operating assets. The value of Tibet's stock ultimately dropped to zero. In December 2011, SAG "acquired A&S and assumed all of the assets and liabilities of A&S." (Am. Compl. ¶ 33.)

Defendants Zou and Downs were A&S's designated observers to Tibet's board of directors in connection with the IPO. Plaintiffs allege that Downs was also A&S's managing director and one of the lead investment bankers who orchestrated Tibet's IPO. Plaintiffs allege that Zou is the sole director of China Tibetan, Tibet's Hong Kong subsidiary, and has total control over Tibet's IPO proceeds.

ACSB is a certified public accountant and advisory firm and was Tibet's independent registered public accounting firm. ACSB provided an audit opinion in Tibet's registration statement and prospectus for the IPO.

Plaintiffs allege that Tibet's registration statement and prospectus contained false statements of material fact and omitted to state material facts about Tibet and its financial condition. Specifically, Plaintiffs allege that the registration statement and prospectus overstated Tibet's assets, misrepresented its indebtedness, and failed to disclose a series of adverse court judgments.

---

[2] These facts are taken from Plaintiffs' amended complaint (Dkt. No. 50), unless otherwise noted.

Neither the registration statement, which became effective December 28, 2010, nor the final prospectus, filed on January 18, 2011, disclosed the actions of the Chinese court or the effect on Tibet's finances.

Plaintiffs allege that all, or substantially all, of the net proceeds from the IPO are deposited in China Tibetan's HSBC bank account in Hong Kong.

## II.    STANDARD OF REVIEW

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) ("[S]tating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest the required element. This does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." (citations omitted)).

When considering a motion to dismiss under *Iqbal*, the Court must conduct a two-part analysis. "First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a plausible claim for relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009) (citations omitted). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Iqbal*, 129 S. Ct. at 1949 (citations omitted).

"As a general matter, a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings. However, an exception to the general rule is that a 'document *integral to or explicitly* relied upon in the complaint' may be considered 'without converting the motion [to dismiss] into one for summary judgment.'" *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (citations omitted). On a motion to dismiss, the Court may also take judicial notice of the record from a previous court proceeding involving the parties. *Toscano v. Conn. Gen. Life Ins. Co.*, 288 F. App'x 36, 38 (3d Cir. 2008).

### III.   DISCUSSION

Defendants move to dismiss Plaintiffs' claims on a variety of grounds. The Court addresses each of Defendants' motions in turn.

#### a.   Defendant SAG

SAG moves to dismiss Plaintiffs' claims on the argument that Plaintiffs have failed to allege that SAG assumed liability for A&S's role in the Tibet IPO. The general rule of corporate successor liability holds that a purchaser of a corporation's assets "does not assume the liabilities of the seller merely by buying its assets." *Berg Chilling Sys., Inc. v. Hull Corp.*, 435 F.3d 455, 464 (3d Cir. 2006); *see also Colman v. Fisher–Price, Inc.*, 954 F. Supp. 835, 838 (D.N.J. 1996) (same) (citing *Ramirez v. Amsted Indus., Inc.*, 431 A.2d 811, 815 (1981)). The general rule against liability admits four limited exceptions: (1) when the purchaser expressly or implicitly agrees to assume the other company's debts and obligations; (2) when the purchase is a *de facto* consolidation or merger; (3) when the purchaser is a mere continuation of the seller; or (4) when the transfer of assets is for the fraudulent purpose of escaping liability. *Phila. Elec. Co. v. Hercules, Inc.*, 762 F.2d 303, 308–09 (3d Cir. 1985).

4

SAG contends that Plaintiffs' complaint fails to allege facts under which one of these four exceptions would apply. The complaint alleges only that SAG "acquired A&S and assumed all of the assets and liabilities of A&S." (Am. Compl. ¶ 33.) Although this allegation is contested,[3] this Court accepts it as true on a motion to dismiss. Accepting that SAG purchased all of the assets of A&S and assumed its liabilities raises "a reasonable expectation" that discovery may reveal additional evidence to find that SAG may be liable for A&S's actions in the IPO under the exceptions for a *de facto* merger or mere continuation. *See Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Moreover, this Court is not persuaded that the cases cited by SAG would counsel for dismissal on this ground. For example, in *Westfield, LLC v. IPC, Inc.*, the court dismissed the plaintiffs' claim because the plaintiffs pled only that the defendant purchased the assets of the prior corporation but failed to plead that the defendant "assumed the debts and liabilities" of the corporation—an allegation that Plaintiffs here have made. 816 F. Supp. 2d 745, 751 (E.D. Mo. 2011). For these reasons, SAG's motion to dismiss is denied.

### b. Defendant ACSB's Motion to Dismiss

ACSB makes a number of arguments to attack Plaintiffs' claims against it. At this early stage in litigation, the Court finds ACSB's arguments unavailing and denies its motion to dismiss.

---

[3] SAG points to the purchase agreement as evidence that SAG purchased only a portion of A&S's assets and assumed none of A&S's liabilities. Nonetheless, as Plaintiffs argue, the *de facto* merger inquiry does not resolve purely on the agreement itself but looks to additional evidence not yet before the Court. *Berg Chilling Sys. Inc. v. Hull Corp.*, 435 F.3d 455, 465 (3d Cir. 2006). Plaintiffs, too, in their opposition briefing cite to evidence outside of the complaint to contend that SAG assumed the liabilities of A&S under the fact-specific inquiries of the *de facto* merger or mere continuation exceptions above. None of these factual issues are properly before the Court on a motion to dismiss and are better addressed following discovery.

Plaintiffs bring claims against ACSB under Section 11 of the Securities Act of 1933, which provides a private right of action when "any part of the registration statement, when such part became effective, contained an untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary to make the statements therein not misleading." 15 U.S.C. § 77k(a).[4] To establish their Section 11 claim, Plaintiffs must show that Tibet's registration statement "(1) contained an untrue statement of material fact; (2) omitted to state a material fact required to be stated therein; or (3) omitted to state a material fact 'necessary to make the statements therein not misleading." *Cal. Pub. Employees Ret. Sys. v. Chubb Corp.*, 394 F.3d 126, 167 (3d Cir. 2004) (quoting 15 U.S.C. § 77k(a)).[5] Plaintiffs allege that Tibet's financial statement materially misrepresented Tibet's financial position, including stating that

---

[4] ACSB attacks Plaintiffs standing to bring a Section 11 claim. This argument is plainly specious. The statute grants the right of action to "any person acquiring such security" of the stock offering (here, the IPO) made in connection with the misleading statements, such that Plaintiffs must demonstrate either having purchased stock directly in the IPO or that Plaintiffs' purchased stock can be traced to the IPO. 15 U.S.C. § 77k(a); *see also In re FleetBoston Fin. Corp. Sec. Litig.*, 253 F.R.D. 315, 345 (D.N.J. 2008) (discussing tracing requirement). Plaintiffs allege that two named plaintiffs purchased stock on the IPO date and that additional shares purchased are traceable to the IPO as the IPO allegedly was the only stock offering conducted by Tibet. (Am. Compl. ¶¶ 17–18, 22.) "[W]hen the issuer made only one offering of securities, a simple exercise in logic connects all purchases of the issuer's securities to that sole issuance." *In re FleetBoston Fin. Corp.*, 253 F.R.D. at 345. Alleging such purchases sufficiently establishes standing at the pleading stage; whether such shares are, in fact, traceable to the IPO is more properly resolved following discovery. *See In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 274 n.7 (3d Cir. 2006).

[5] ACSB further attacks Plaintiffs complaint by attempting to raise the affirmative defense of loss causation. Section 11 grants a defense to a defendant that can "prove[] that any portion or all of [Plaintiffs'] damages represents other than the depreciation in value of such security resulting from [misrepresentations] of the registration statement." 15 U.S.C. § 77k(e)(3). The crux of Plaintiffs' allegations is that Tibet was heavily indebted at the time of the IPO and that the financial filings certified by ACSB materially misrepresented Tibet's financial position. Tibet's stock price at the IPO was inflated as a result, then bottomed out as Tibet's true financial position became public. Although ACSB may ultimately be able to raise a defense of loss causation, this Court does not find the defense apparent on the face of the complaint. *See also In re Adams Golf, Inc. Sec. Litig.*, 381 F.3d 267, 277 (3d Cir. 2004) ("While a defendant may be able to prove this 'negative causation' theory, an affirmative defense may not be used to dismiss a plaintiff's complaint under Rule 12(b)(6).").

Tibet had $27 million in assets (including $8.3 million in cash) and that Tibet owed $3.65 million on long-term loans as of September 30, 2010, when in fact Tibet had defaulted on a $4.54 million undisclosed loan and was on the verge of bankruptcy. (Am. Compl. ¶¶ 48–51.) Plaintiffs further allege that the defaulted loan was the subject of a legal dispute before a Chinese court during 2010 and that the court entered judgment against a Tibet subsidiary on September 10, 2010. (Am. Compl. ¶¶ 52–56.)

To be liable for a material misrepresentation or omission in a registration statement, a defendant must fit into one of five statutorily enumerated categories. *See* 15 U.S.C. § 77k(a). Plaintiffs allege that liability attaches to ACSB under the fourth category, which covers "every accountant, engineer, or appraiser, or any person whose profession gives authority to a statement made by him, who has with his consent been named as having prepared or certified any part of the registration statement, or as having prepared or certified any report or valuation which is used in connection with the registration statement, with respect to the statement in such registration statement, report, or valuation, which purports to have been prepared or certified by him." 15 U.S.C. § 77k(a)(4).

ACSB argues that it cannot be held liable under Section 11 for the misrepresentations alleged above in the registration statement because an auditor may only be held liable for its own audit report—in other words, that Plaintiffs must allege that ACSB's audit report itself contained material misrepresentations. Section 11, however, expressly imposes liability for misrepresentations in the financial statement on auditors who "prepare[] or *certify*[]" the registration statement, and Plaintiffs have alleged that ACSB certified the financial statements. (Am. Compl. ¶¶ 38–39, 94.) Moreover, the two primary cases ACSB cites in support of this argument, *Deephaven Private Placement Trading, Ltd. v. Grant Thornton & Co.*, 454 F.3d 1168

(10th Cir. 2006), and *In re IKON Office Solutions, Inc.*, 277 F.3d 658 (3d Cir. 2002), both addressed auditor liability under other sections of securities law[6]—Sections 18(a) and 10(b) of the Securities Exchange Act of 1934, respectively—neither of which imposes liability on auditors for certifying financial statements as Section 11 does. Even were the Court to accept ACSB's argument, Plaintiffs have also alleged that ACSB's audit report stated that it was "conducted . . . in accordance with the standards of the Public Company Accounting Oversight Board" and that this statement was materially and objectively false: the complaint alleges that ACSB failed to exercise such appropriate professional care and judgment—for example, that ACSB did not verify basic information within the financial statement against Tibet's bank statements, lenders, regulatory filings, or public records. (Am. Compl. ¶¶ 94–103, 105, 107.) *See also In re IKON Office Solutions, Inc.*, 277 F.3d at 673 (an auditor's certification represents that it "exercised appropriate, not flawless, levels of professional care and judgment" (citations omitted)). In short, Plaintiffs have alleged material and objective[7] misrepresentations in sufficient detail to withstand a motion to dismiss.

---

[6] In fact, the *Deephaven* court expressly noted that Section 11, unlike Section 18(a), imposes liability on accountants for certifying financial statements containing material misrepresentations. *See Deephaven Private Placement Trading*, 454 F.3d at 1174 n.6.

[7] The Court is not persuaded by ACSB's argument that Plaintiffs must allege subjective falsity. ACSB contends that subjective falsity requirement derives from holdings in *Virginia Bankshares, Inc. v. Sandberg*, 501 U.S. 1083 (1991), and *In re Donald J. Trump Casino Securities Litigation*, 7 F.3d 357 (3d Cir. 1993). Plaintiffs' allegations, however, concern misrepresentations of fact regarding Tibet's assets and debts and ACSB's conduct relative to professional standards in performing its audit. Plaintiffs' allegations do not concern "opinions, predictions [or] other forward-looking statements," as at issue in *Virginia Bankshares, Inc.* and *In re Donald J. Trump Casino*. *In re Trump Casino*, 7 F.3d at 368–69. Such statements of "soft information" are not actionable misrepresentations unless the speaker does not genuinely and reasonably believe. *See id.* An opinion is not false unless it is not meant. But there is no analogous reason to read a subjective falsity requirement into misrepresentations of objective fact, as alleged here.

8

### c.   Defendants Zou and Downs' Motions to Dismiss

Defendants Zou and Downs both move to dismiss the claims against them on the argument that they are not proper Sections 11 or 15 defendants.[8] As noted above, Section 11(a) specifically enumerates five categories of potential defendants liable for misrepresentations in registration statements:

> (1) every person who signed the registration statement;
>
> (2) every person who was a director of (or person performing similar functions) or partner in the issuer at the time of the filing of the part of the registration statement with respect to which his liability is asserted;
>
> (3) every person who, with his consent, is named in the registration statement as being or about to become a director, person performing similar functions, or partner;
>
> (4) every accountant, engineer, or appraiser, or any person whose profession gives authority to a statement made by him, who has with his consent been named as having prepared or certified any part of the registration statement, or as having prepared or certified any report or valuation which is used in connection with the registration statement, with respect to the statement in such registration statement, report, or valuation, which purports to have been prepared or certified by him;
>
> (5) every underwriter with respect to such security.

15 U.S.C. § 77k(a).

Plaintiffs assert that they have alleged facts sufficient to state a claim against Downs as an underwriter under the fifth category. The Securities Act defines an "underwriter" as "any person who has purchased from an issuer with a view to, or offers or sells for an issuer in connection with, the distribution of any security, or participates or has a direct or indirect participation in any such undertaking, or participates or has a participation in the direct or indirect underwriting of any such undertaking." 15 U.S.C. § 77(a)(11). Downs argues that, because the complaint alleges only that A&S functioned as underwriter for the Tibet IPO and

---

[8] Because the underlying facts and legal standards are similar, the Court addresses both defendants' motions concurrently, noting differences where relevant.

does not allege the same for Downs, that he cannot be held liable as an underwriter under Section 11. Downs's argument relies on too simplistic a reading of the complaint. Plaintiffs allege that Downs was a "Managing Director" of A&S and "one of the lead investment bankers who orchestrated Tibet's IPO." (Am. Compl. ¶ 35.) A&S, Plaintiffs allege, were underwriters in the Tibet IPO. (*Id.* ¶¶ 44–46, 73.) Additionally, Downs was listed in the registration statement and prospectus as an "observer" to the board of directors who may "significantly influence the outcome of matters submitted to the Board." (*Id.* ¶ 35.)[9] Downs' reliance on *In re Lehman Bros. Mortgage-Backed Securities Litigation* is also misplaced. As Plaintiffs note, that court addressed whether ratings agencies, who participated in the structuring of mortgage loan pools, were properly alleged as liable underwriters. The Second Circuit affirmed the district court's finding that plaintiffs "failed to allege that defendants 'participated in the relevant' undertaking: that of purchasing securities from the issuer with a view towards distribution, or selling or offering securities for the issuer in connection with a distribution." 650 F.3d 167, 182–83 (2d Cir. 2011). Plaintiffs' allegations here, by contrast, suggest that Downs, in a position of control at A&S and a position of "significant[]" influence, if not control, at Tibet, was a primary actor in orchestrating A&S' alleged underwriting of the Tibet IPO. In short, Plaintiffs have alleged that Downs participated in the underwriting. If these allegations cannot be borne out by the evidence, they will assuredly be dismissed at a later stage.

Plaintiffs assert that they have alleged facts sufficient to state a claim against Zou as a "person performing similar functions" as a director under the second category. The complaint alleges that Zou, like Downs, was listed in the registration statement and prospectus as an

---

[9] In briefing, Plaintiffs also assert that Downs was the signatory to Escrow and Placement Agreements and wrote to the SEC to request acceleration of effectiveness of the Tibet Registration Statement. (Pls.'s Opp. Br. at 14.) These facts were not alleged in the complaint and are not properly before the Court on a motion to dismiss; their relevance and probity are properly addressed following discovery.

"observer" to the board of directors who may "significantly influence the outcome of matters submitted to the Board." (Am. Compl. ¶ 36.) Zou was also alleged to be the sole director of Tibet's wholly owned Hong Kong subsidiary, China Tibetan. (*Id.*) The Court is not persuaded by Plaintiffs' argument that a director of a subsidiary corporation is analogously functioning as a director of the parent as in *In re Unicapital Corp. Securities Litigation* where the court found that an individual named in registration statement as a soon-to-be director of a division of a company was a proper Section 11 defendant.[10] 149 F. Supp. 2d 1353, 1366–67 (S.D. Fla. 2001). A subsidiary is a legally distinct entity and not liable for the actions of its parent corporation. *See In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 341 n.44 (3d Cir. 2010). However, here, Plaintiffs have alleged that the subsidiary has played a key role in harboring proceeds from the IPO by detailing the typical process by which monies from an international IPO are transferred into China and citing statements from Tibet's SEC filings that plausibly imply that China Tibetan (under the sole control of Zou) possesses the proceeds from the IPO. (Am. Compl. ¶¶ 72–82.) These allegations, coupled with the naming of Zou in the registration statement and prospectus as an individual with "significant[] influence" over the Board, including the allegation that Zou was paid as any other board member, (Am. Compl. ¶ 36), plausibly allege that Zou's role at Tibet was more akin to director than passive observer. Given these allegations, that he did not have voting power is not enough to dismiss the claims against him at this early stage of litigation.[11]

---

[10] In addition, the *Unicapital Corp.* court addressed liability not under category two, as here, but category three—every person who, with his consent, is named in the registration statement as being or about to become a director, person performing similar functions, or partner. *In re Unicapital Corp.*, 149 F. Supp. 2d at 1366–67.

[11] The Court also declines to dismiss Plaintiffs' Section 15 claims against Downs and Zou at this time. "Section 15 of the Securities Act provides for joint and several liability on the part of one who controls a violator of Section 11 . . . .. [T]he plaintiff must prove that one person controlled

## IV.     CONCLUSION & ORDER

For the reasons stated above,

**IT IS** on this 20th day of February, 2015,

**ORDERED** that SAG's motion to dismiss (Dkt. No. 102) is **DENIED**; and it is further

**ORDERED** that ACSB's motion to dismiss (Dkt. No. 101) is **DENIED**; and it is further

**ORDERED** that Zou's motion to dismiss (Dkt. No. 96) is **DENIED**; and it is further

**ORDERED** that Downs' motion to dismiss (Dkt. No. 104) is **DENIED**.


                                    **IT IS SO ORDERED.**


                                     **/s/ Hon. Faith S. Hochberg**
                                    Hon. Faith S. Hochberg, U.S.D.J.

---

another person or entity and that the controlled person or entity committed a primary violation of the securities law." *In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 284 (3d Cir. 2006). The plaintiff's allegations must be that the defendant "culpably participated" in the primary wrong, not merely that the defendant was in a position of control. *Rochez Bros. Inc. v. Rhoades*, 527 F.2d 880, 883–86 (3d Cir. 1975). For the reasons above, this Court finds that the complaint sufficiently alleges facts to plausibly state Section 15 claims against Downs and Zou given each's authority within A&S and Tibet, respectively.